UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES RICHARD BROWN,

      Plaintiff,

v.                            Case No.:  2:20-cv-446-JES-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff James Richard Brown filed a Complaint on June 24, 2020.  (Doc. 1).
Plaintiff seeks judicial review of the final decision of the Commissioner of the Social
Security Administration ("SSA") denying his claim for a period of disability and
disability insurance benefits.  The Commissioner filed the transcript of the
administrative proceedings (hereinafter referred to as "Tr." followed by the
appropriate page number), and the parties filed a joint memorandum detailing their
respective positions.  (Doc. 25).  For the reasons set forth herein, the Undersigned
recommends that the decision of the Commissioner be **AFFIRMED** pursuant to §
205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental impairment that can be
expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

## II.        Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on July 5, 2017, alleging a disability onset date of July 1, 2017.  (Tr. at 17, 102, 209).[1] Plaintiff's claim was initially denied on September 15, 2017, and again upon reconsideration on November 17, 2017.  (*Id.* at 127, 132).  On April 29, 2019, Administrative Law Judge ("ALJ") Raymond Rodgers held a hearing that Plaintiff and his attorney attended.  (*Id.* at 40-58).  The ALJ issued an unfavorable decision on June 5, 2019.  (*Id.* at 14-31).  The Appeals Council subsequently denied Plaintiff's request for review on May 8, 2020.  (*Id.* at 1).  Plaintiff filed his Complaint in this Court on June 24, 2020.  (Doc. 1).  The case is ripe for review.

## III.       Summary of the Administrative Law Judge's Decision

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F.

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed his claim after March 27, 2017.

App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his or her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021.  (Tr. at 19).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2017.  (*Id.*).  At step two, the ALJ found that Plaintiff has the following severe impairments:  "right eye blindness; encephalopathy status post trauma; status post traumatic brain injury (TBI); status post remote left ankle fracture; obesity; and neurocognitive disorder (20 [C.F.R. §] 404.1520(c))."  (*Id.*).  The ALJ, at step three, determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R. §] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525, and 404.1526)."  (*Id.* at 20).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [L]ift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour work day; stand and/or walk for six hours in an eight hour workday; no operation of foot controls; occasional climbing of ramps or stairs; but may never climb ladders, ropes, or scaffolds; occasional balancing; frequent stooping, kneeling, and crouching; no crawling; no commercial driving; no exposure to hazardous machinery or unprotected heights; limited to occupations that do not require depth perception and binocular vision; able to understand, remember, and carryout simple tasks; low stress work defined as only occasional decision-making and only occasional changes in work setting; occasional interaction with coworkers and supervisors; and no interaction except incidental with the public.

(*Id.* at 22).  The ALJ also determined Plaintiff could not perform any of his past relevant work, citing 20 C.F.R. §§ 404.1565.  (*Id.* at 29).

At step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 [C.F.R. §§] 404.1569 and 416.1569a)." (*Id.*).  Specifically, the ALJ, relying on Vocational Expert ("VE") testimony, found that Plaintiff could perform the following jobs that exist in significant numbers in the national economy:  Marker (*Dictionary of Occupational Titles* ("DOT")# 209.587-034), Office Helper (DOT# 239.567-010), and Routing Clerk (DOT# 222.587-038).[2]  (*Id.* at 30).  For these reasons, the ALJ found that

---

[2]  Although the ALJ and the VE use the term routing clerk, the applicable DOT is labeled "Router," with routing clerk listed as an alternative job title.  (Doc. 25-5 at 1).

"[t]he claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2017, through the date of this decision (20 [C.F.R. §] 404.1520(g))." (*Id.*).

## IV.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3

---

In the briefing, the parties occasionally refer to the position as "router."  (*See, e.g.*, Doc. 25 at 11).  For the sake of clarity, the Undersigned refers to the applicable position as "routing clerk," consistent with the ALJ's decision and the majority of the parties' briefing.

(11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; accord *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## V.     Analysis

On appeal, Plaintiff raises three issues. As stated by the parties, the issues are:

1.    Whether the ALJ properly considered the opinion of the state agency physician, Dr. Arkin, and presented a complete hypothetical question to the VE;

2.    Whether the ALJ properly resolved the apparent inconsistencies between the VE testimony and the DOT; and

3.    Whether the Appeals Council properly denied the Plaintiff's request for review in light of the evidence concerning the Plaintiff's left foot injury submitted to it.

(Doc. 25 at 10, 24, 39). The Undersigned addresses each issue in turn below.

### A.     The ALJ properly considered the opinion of Dr. Arkin and presented a complete hypothetical question to the VE.

Plaintiff first argues that the ALJ's decision is not supported by substantial evidence because "[t]he ALJ failed to properly consider the opinion of the State agency physician, Dr. Arkin, and failed to present a complete hypothetical question to the VE." (*Id.* at 10 (emphasis omitted)). In support, Plaintiff notes that Dr. Arkin found that Plaintiff should "avoid even moderate exposure to noise due to headaches." (*Id.* at 11 (citing Tr. at 116)). Plaintiff maintains that the ALJ rejected

"Dr. Arkin's opinion because the ALJ believed the Plaintiff was more limited." (*Id.*). Nevertheless, Plaintiff maintains that the ALJ did not recognize or address Dr. Arkin's opinion as to "Plaintiff's ability to work around noise." (*Id.* (citations omitted)).

Additionally, Plaintiff contends that a limitation on Plaintiff's ability to work around noise could have affected the outcome of the case because two of the jobs the VE testified Plaintiff could perform – marker and office helper – "have a noise level requirement of 'moderate.'" (*Id.* (citations omitted)). As to the third position, routing clerk, Plaintiff argues that "there is a reasonable possibility that the job . . . is obsolete as described in the DOT" because it requires the individual "to stamp, stencil, letter, or tag items to indicate delivery routes and to read addresses on the articles and determine route using standard charts." (*Id.* (citing *Kelly P. v. Saul*, No. 5:18-cv-00777-MAA, 2019 WL 3573591, at *6 (C.D. Cal. Aug. 6, 2019))).

In response, Defendant argues that "Plaintiff has failed to demonstrate reversible error in the ALJ's evaluation of Dr. Arkin's prior administrative medical finding." (*Id.* at 12 (emphasis omitted)). In support, Defendant begins by addressing the new regulations and argues that they govern Plaintiff's case. (*See id.* at 12-19).

Turning to the merits of Plaintiff's argument, Defendant contends that "[t]he ALJ found Dr. Arkin's prior administrative medical finding was not persuasive because it was not consistent with the other medical evidence of record." (*Id.* at 19 (citing Tr. at 27)). Defendant argues that the ALJ specifically found "that Plaintiff was more limited [than Dr. Arkin determined] with respect to lifting, carrying, depth

perception, and balance." (*Id.* at 19 (citing Tr. at 27)). Defendant asserts that the ALJ, therefore, found that limiting Plaintiff to "light work with additional limitations was more consistent with the evidence." (*Id.* at 19-20 (citing Tr. at 27-28)). Defendant essentially contends that the ALJ sufficiently complied with the new regulations because the ALJ properly evaluated the persuasiveness of Dr. Arkin's opinion. (*See id.* at 20-21 (citations omitted)). Likewise, Defendant argues that Plaintiff's argument that the ALJ did not "recognize" Dr. Arkin's noise limitation is unavailing because the ALJ noted that Dr. Arkin's findings included "environmental limitations," which includes noise limitations. (*Id.* at 21-22 (citing Tr. at 27)).

Moreover, Defendant argues that even if the ALJ erred in not including a noise limitation, the error is harmless because "at least one of the jobs the ALJ found Plaintiff could perform at step five [routing clerk] did not require exposure to moderate noise levels." (*Id.* at 22 (citing DOT# 222.587-038)). In essence, Defendant contends that because the position of routing clerk exists in significant numbers and does not require moderate exposure to noise, any error in failing to impose a limitation to avoid moderate noise would be harmless. (*See id.* at 22-24 (citations omitted)). Finally, Defendant contests Plaintiff's assertion that the position of routing clerk is obsolete, arguing that (1) "the regulations still provide that the DOT is considered a source of reliable job information;" (2) the case relied on by Plaintiff is not binding on this Court; and (3) "even if the number of routing clerk position[s] were reduced by as much as 75% or more, a significant number of those jobs would still exist in the nation economy." (*Id.* at 23 n.11 (citations omitted)). In

sum, Defendant maintains that "Plaintiff failed to meet his burden of showing any error the ALJ made resulted in harm." (*Id.* at 24).

An RFC is the most a claimant can still do despite the physical and mental limitations of his impairments. *See* 20 C.F.R. § 416.945(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The Eleventh Circuit has held "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).

In March 2017, the SSA implemented new regulations regarding the evaluation of medical evidence for claims, like Plaintiff's, filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under these new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

Under the new regulations, an ALJ does not have to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). "Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sep. 26, 2019) (internal citation omitted). Furthermore, "nothing in the relevant regulations requires ALJs to apply an all-or-

nothing approach when assessing a medical source's opinions." *Hand v. Comm'r of Soc. Sec.*, 786 F. App'x 220, 225 (11th Cir. 2019).  Instead, the ALJ's RFC determination must merely be supported by substantial evidence.  42 U.S.C. § 405(g).

Importantly, the "new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'" *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 6-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007)).  Nevertheless, the ALJ "is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (quoting 20 C.F.R. § 404.1527(f)(2)(i)); *see also* SSR 96-6p.

Finally, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision' enables the district court 'to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Here, the Undersigned finds that the ALJ did not err in finding Dr. Arkin's opinion unpersuasive.  Specifically, because the new regulations apply to Plaintiff's case, the ALJ was only required to articulate his finding as to persuasiveness in light of the supportability and consistency factors.  *See Freyhagen*, 2019 WL 4686800, at *2.  The ALJ properly weighed the opinion, determining that it was inconsistent with

the findings of Dr. Driscoll, Dr. Wright, and Dr. Goodwin.  (*See* Tr. at 27-28).  Thus, the ALJ did not err in determining that Dr. Arkin's opinion was unpersuasive.

Moreover, the Undersigned finds Plaintiff's argument that the ALJ did not address the noise limitation unavailing.  (*See* Doc. 25 at 11).  Rather, the ALJ noted that Dr. Arkin found that Plaintiff had "environmental limitations," which the record shows include noise limitations.  (Tr. at 27, 116).  Thus, the Undersigned finds that the ALJ considered the recommended limitation but chose not to adopt it.

Having properly considered the persuasiveness of Dr. Arkin's findings, the Undersigned finds that the ALJ did not err in declining to adopt the noise limitation. This Court has previously found that even when an ALJ gives great weight to an opinion, the ALJ need not adopt the findings verbatim if he provides a reason for rejecting the limitation.  *See Ramos v. Comm'r of Soc. Sec.*, No. 2:19-cv-886-FtM-MRM, 2021 WL 960688, at *5 (M.D. Fla. Mar. 15, 2021); *see also Bailey v. Comm'r of Soc. Sec.*, No. 6:18-cv-1518-Orl-37LRH, 2019 WL 2425303, at *4 (M.D. Fla. May 23, 2019), *report and recommendation adopted,* No. 6:18-cv-1518-Orl-37LRH, 2019 WL 2423422 (M.D. Fla. June 10, 2019).  Although the cited cases were governed by the old regulations, the Undersigned nonetheless finds them persuasive to the extent that a finding of persuasiveness is analogous to an ALJ's decision to give great weight to a medical opinion.  Thus, even had the ALJ found the opinion persuasive, he need not adopt every limitation verbatim if he provides a reason for rejecting the limitation.  *See Ramos*, 2021 WL 960688, at *5.  Here, however, the ALJ did not find

the opinion persuasive.  (Tr. at 27).  Thus, the Undersigned finds that the ALJ was under no obligation to adopt any of Dr. Arkin's findings.

As to Plaintiff's argument that the hypothetical was insufficient because it did not include a limitation to avoid moderate noise, the Undersigned finds the argument likewise unavailing.  "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform."  *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004).  An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a VE to determine whether there are jobs that exist in the national economy that a claimant can perform.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).  If the ALJ decides to use a VE, for the VE's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).  However, an ALJ is "not required to include findings in the hypothetical that the ALJ has found to be unsupported."  *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)).

Here, although the ALJ did not present a hypothetical that included a limitation to avoid a moderate noise level, the ALJ was not required to include limitations that he found to be unsupported by the record.  *See Forrester*, 455 F. App'x at 903.  As discussed above, the Undersigned finds no error with the ALJ's

12

evaluation of the record evidence, including the ALJ's decision to not include a noise limitation. To the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand. *See Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014).

Furthermore, the Undersigned finds that even if the ALJ erred in not including the noise limitation found by Dr. Arkin, any error is harmless because substantial evidence supports the ALJ's ultimate decision. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)) (concluding that an error is harmless if a correct application of the regulations would not contradict the ALJ's ultimate findings). Specifically, although the positions of marker and office helper involve a noise level requirement of "moderate," (*see* Docs. 25-3 at 5; 25-4 at 5), the position of routing clerk involves a noise level requirement of "quiet," (*see* Doc. 25-5 at 6). Thus, even had the ALJ imposed a limitation that Plaintiff avoid a moderate noise level, Plaintiff could still perform the position of routing clerk. (*See id.*).

Notably, this Court has found that an ALJ's failure to adopt a noise limitation is harmless when the ALJ found that the plaintiff is able to perform a job that has a noise level of "quiet" and exists in significant numbers. *Sheres v. Berryhill*, No. 6:18-cv-1000-Orl-DNF, 2019 WL 2755031, at *9 (M.D. Fla. July 2, 2019). Here, the ALJ found that jobs – *i.e.*, multiple jobs – including routing clerk existed in significant numbers in the national economy. (*See* Tr. at 29). In listing out the three positions of marker, office helper, and routing clerk, the ALJ implicitly found that each job exists

13

in significant numbers in the national economy.  (*See id.* at 29-30).  Thus, the Undersigned finds that even if the ALJ erred in failing to adopt a noise limitation, any error is harmless because the ALJ found that Plaintiff could perform a position that has a noise level of quiet and exists in the national economy.  *See Sheres*, 2019 WL 2755031, at *9.

Even assuming *arguendo* that the ALJ had not found that each job individually existed in significant numbers, Eleventh Circuit precedent shows that the Court may make such a finding.  *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1007 (11th Cir. 2020).  Here, the ALJ noted that 38,000 routing clerk jobs existed.  (Tr. at 30).  Importantly, the Eleventh Circuit has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations."  *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015).  Nonetheless, this Court has found a lower number of jobs significant.  *See Blackmon v. Saul*, No. 8:19-cv-3040-T-AEP, 2021 WL 222777, at *4 (M.D. Fla. Jan. 22, 2021) (finding 7,000 jobs significant).  Thus, the Undersigned finds that the position of routing clerk exists in significant numbers. (*See* Tr. at 30).

Accordingly, the Undersigned finds that even if the ALJ erred in not including a limitation to avoid moderate exposure to noise, the ALJ did not err in finding that Plaintiff could perform the job of routing clerk, which exists in significant numbers in the national economy and has a noise level requirement of "quiet."  (*See id.*).

Finally, the Undersigned is not persuaded by Plaintiff's argument that the position of routing clerk, as defined by the DOT, is obsolete. Plaintiff provided no documentation or evidence supporting his argument. (*See* Doc. 25 at 11). To the extent Plaintiff attempts to support his argument by the Central District of California's decision in *Kelly P. v. Saul*, the Undersigned finds the decision unpersuasive because it is governed by case law originating outside the Eleventh Circuit. (*See id.* (citing *Kelly P. v. Saul*, No. 5:18-cv-00777-MAA, 2019 WL 3573591, at *6 (C.D. Cal. Aug. 6, 2019))).

Nevertheless, even if the presiding United States District Judge finds the decision persuasive, the decision, coupled with Eleventh Circuit precedent, does not support Plaintiff's position. *See Kelly P.*, 2019 WL 3573591, at *6. Specifically, the Court in *Kelly P.* concluded that "what is commonly known about the national job market is inadequate to find that the occupation of router, as it is described in the DOT, is completely obsolete." *Id.* The Court, therefore, found that a reduction, rather than a finding of complete obsoleteness, was appropriate. *See id.* Importantly, the United States Court of Appeals for the Ninth Circuit, whose precedent was binding on the Court in *Kelly P.*, has found that while 25,000 jobs in the national economy is significant, it is a "close call." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014). Relying on the Ninth Circuit precedent, the Court in *Kelly P.* found that "[e]ven a modest reduction" of 15% results in the number of available jobs no longer being significant. *Kelly P.*, 2019 WL 3573591.

By contrast, here, even a 95% reduction results in a significant number of available jobs under Eleventh Circuit precedent.  Indeed, if the number of routing clerk jobs were reduced by 95%, there would still be 1,900 jobs available.  As noted above, the Eleventh Circuit has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations."  *Atha*, 616 F. App'x at 934.  Nonetheless, the Eleventh Circuit has found a lower number of jobs significant.  *Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (per curiam) (finding 840 jobs constituted a significant number in the national economy to support an ALJ's step five determination).  Thus, the Undersigned finds that although Plaintiff has failed to show that the position of routing clerk is obsolete, even if reduced by 95% to account for any potential finding of obsoleteness, the number of available routing clerk positions would still be significant.  Accordingly, the Undersigned finds that remand would not be warranted even if the number of jobs were reduced.  *See Graham v. Berryhill*, No. 2:17-cv-153-FtM-DNF, 2018 WL 4520342, at *7 (M.D. Fla. Sept. 21, 2018) (finding that remand is inappropriate because even after reduction to account for an alleged error, the relevant job still exists in a significant numbers).

In sum, although the Undersigned finds that the ALJ did not err in failing to include a limitation to avoid moderate levels of noise, any error would be harmless because Plaintiff would still be able to perform the work of routing clerk, which has a noise level requirement of quiet and exists in significant numbers.

**B.**   **No apparent conflict exists between Plaintiff's RFC and a reasoning level two position.**

Plaintiff next contends that "[t]he ALJ failed to discharge [his] duty to resolve [an] apparent inconsistency . . . between the [r]easoning levels of the jobs the ALJ found the Plaintiff could perform at step five and the limitations the ALJ identified in the hypothetical question to the VE." (Doc. 25 at 24 (emphasis omitted)).  In support, Plaintiff argues that jobs with a reasoning level above one conflict with a limitation to "simple tasks" or "simple instructions."  (*Id.* at 26-27 (citations omitted)).  Additionally, relying on non-binding case law, Plaintiff essentially contends that because he is limited to "'understand, remember, and carryout simple tasks,' (or 'simple instructions' as stated somewhat differently in the hypothetical question to the VE)" there is an apparent conflict between the VE testimony and the reasoning requirements of the jobs Plaintiff was found to be able to perform.  (*See id.* at 26-31).  Notably, Plaintiff acknowledges that the ALJ asked the VE whether the jobs with a reasoning level of two are consistent with the "limitation of the ability to understand, remember, and carry-out simple tasks" and the VE replied in the affirmative.  (*Id.* at 29 (citing Tr. at 56)).  Plaintiff maintains, however, that this was insufficient to discharge the ALJ's duty to resolve the conflict because the ALJ simply took the VE at his word.  (*Id.* (citing *Washington*, 906 F.3d at 1365)).  In sum, Plaintiff contends that the ALJ needed to investigate and resolve the inconsistency and his failure to do so was reversible error.  (*Id.* at 31).

In response, Defendant argues that substantial evidence supports the ALJ's decision because the ALJ posed a hypothetical to the VE that reflected Plaintiff's RFC and the VE testified that a person with those limitations could perform the representative jobs of marker, office helper, and routing clerk. (*Id.* at 32 (citing Tr. at 53-54)). Rather, Defendant essentially contends that non-binding Eleventh Circuit precedent establishes that no apparent conflict exists between a limitation to simple, routine, repetitive tasks and the reasoning level two job identified by the VE. (*Id.* at 33-35 (citations omitted)).[3] Additionally, Defendant maintains that the definitions of simple tasks, routine tasks, and repetitive tasks comport with the definition of a reasoning level two. (*See id.* at 35 (citations omitted)). Moreover, Defendant provides additional non-binding cases in which courts have concluded that no apparent conflict exists between a limitation to simple, routine, repetitive tasks and jobs requiring a reasoning level of two. (*Id.* at 36-38 (citations omitted)). Finally, Defendant addresses the case law cited by Plaintiff and argues that the cases are unpersuasive and distinguishable. (*Id.* at 38 (citations omitted)). Thus, Defendant maintains that the ALJ did not need to investigate any inconsistency because none exists. (*Id.* at 39).

---

[3] Notably, Defendant appears to set forth an argument only as to a limitation to simple tasks, routine tasks, and repetitive tasks, (*see* Doc. 25 at 33-38), which is not the limitation imposed on Plaintiff, (*see* Tr. at 22). As far as the Undersigned can tell, it seems that Defendant is attempting to analogize a limitation to simple, routine, and repetitive tasks and Plaintiff's limitation to understand, remember, and carry-out simple tasks because both impose a limitation to simple tasks. (*See* Doc. 25 at 32 (citation omitted)).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a VE to determine whether there are jobs that exist in the national economy that a claimant can perform. *Winschel*, 631 F.3d at 1180. If the ALJ decides to use a VE, for the VE's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

In addition, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). Thus, an ALJ must ask the VE whether a conflict between his or her testimony and the DOT exists and must ask for an explanation if there appears to be a conflict. *Id.* at 1363. Moreover, whenever a conflict is apparent, the ALJ must ask the VE about it. *Id.* An apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony. At a minimum, a conflict is apparent if a reasonable comparison

of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* at 1365. "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363. This is an independent obligation of the hearing examiner. *Id.*

As an initial matter, the Undersigned finds that there is no apparent conflict between the limitation to "understand, remember, and carryout simple tasks" and an occupation with a reasoning level two. Indeed, the Eleventh Circuit specifically addressed this contention in its published opinion in *Buckwalter v. Acting Commissioner of Social Security* and determined that the two are not inconsistent. 997 F.3d 1127 (11th Cir. 2021). The Eleventh Circuit determined that there was no apparent conflict between an RFC that limited the plaintiff's ability to "understand, carry-out, and remember simple instructions" and jobs with a reasoning level of two. *Id.* at 1134. Rather, the Eleventh Circuit concluded that the difference between a reasoning level of one and a reasoning level of two was the "length" of the instruction, not the complexity. *Id.* at 1135 (emphasis omitted).

Because the limitation imposed on Plaintiff is essentially identical to that discussed in *Buckwalter*, the Undersigned finds the Eleventh Circuit's decision dispositive of the issue. Indeed, even if Plaintiff were attempting to distinguish Plaintiff's limitation to "understand, remember, and carryout simple *tasks*," (Tr. at 22 (emphasis added)), from the limitation to "understand, remember, and carryout

simple *instructions*" discussed in *Buckwalter*, such a distinction is unpersuasive given the cases relied on by the Eleventh Circuit, *see Buckwalter*, 997 F.3d at 1134-35 (emphasis added).  Specifically, in support of its conclusion, the Eleventh Circuit favorably cites decisions by the Fourth and Eighth Circuits that involved limitations to simple tasks.  *See id.* (citing *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019); *Moore v. Astrue*, 623 F.3d 599 (8th Cir. 2010)).  Thus, the Undersigned finds any distinction between a limitation to simple instructions and a limitation to simple tasks does not affect the applicability of the Eleventh Circuit's decision in *Buckwalter*.

Here, the three occupations identified by the ALJ require a reasoning level of two.  (Docs. 25-3 at 3; 25-4 at 3; 25-5 at 3).  Because the Undersigned determines that no apparent conflict exists between a limitation to "understand, remember, and carryout simple tasks" and a reasoning level two occupation, the Undersigned finds that Plaintiff could perform the work of a marker, office helper, or routing clerk and, therefore, that the ALJ did not err.  Thus, the Undersigned recommends that the decision be affirmed on this issue.

**C.    The Appeals Council did not err refusing to consider the new evidence.**

As his final argument, Plaintiff asserts that "[t]he Appeals Council erroneously denied the Plaintiff's request for review in light of the new and material evidence from 2006 and 2008 submitted to the Appeals Council concerning the Plaintiff's left foot injury."  (Doc. 25 at 39 (emphasis omitted)).  In support, Plaintiff contends that the "evidence showed permanent range of motion restrictions in the left foot and

disproves the evidence upon which the ALJ relied in making his decision." (*Id.* (emphasis omitted)).  Specifically, Plaintiff refers to a 2006 "surgery involving open reduction internal fixation on his left calcaneus with fusion" following a fracture to his left calcaneus.  (*Id.* at 40 (citing Tr. at 69, 70, 76)).  Additionally, Plaintiff notes that in a 2008 examination, the surgeon, Dr. Jeffrey Witte, found that Plaintiff had "about 40-degree ankle motion with pain."  (*Id.* (citing Tr. at 86)).

Plaintiff notes that the Appeals Council refused to exhibit this evidence, finding that it "does not show reasonable probability that it would change the outcome of the case."  (*Id.* at 41 (citing Tr. at 2)).  Plaintiff argues that the Appeals Council erred because the evidence "shows permanent range of motion limitations in the Plaintiff's ankle in direct contradiction to Dr. Wright's notes upon which the ALJ relied in making his decision."  (*Id.* (citing Tr. at 20, 1226, 1229)).  Specifically, Plaintiff asserts that the ALJ relied largely on Dr. Wright's findings that "Plaintiff had a normal gait, normal range of motion, and other normal physical examination findings."  (*Id.* (citing Tr. at 20, 1226, 1229)).  Plaintiff contends, however, that the new evidence presented to the Appeals Council shows that Dr. Wright's notes are inaccurate because Plaintiff could not have a normal range of motion after having his left calcaneus fused.  (*Id.*).

Finally, Plaintiff concedes that he worked in 2006 and 2008 notwithstanding his injury.  (*Id.* at 41-42).  Plaintiff notes, however, that the ALJ determined that Plaintiff could not perform his past relevant work.  (*Id.* (citations omitted)).  Likewise, Plaintiff points out that the work performed in 2009 and 2010 was "short-

lived" and the work performed from 2012-2017 "was part-time and only required him to stand and/or walk for 4 hours in an 8-hour workday."  (*Id.* at 42 (citations omitted)).

In response, Defendant argues that substantial evidence supports the Appeals Council's decision because it "properly considered the . . . evidence, determined that it did not show a reasonable probability that it would have changed the ALJ's decision, and denied Plaintiff's Request for Review."  (*Id.* at 42 (citing Tr. 1-5)).  In support, Defendant notes that the records submitted to the Appeals Council are dated nine and eleven years before the alleged onset of disability and at a time when Plaintiff was working.  (*Id.* at 43 (citing Tr. at 59-86, 209, 216-17, 221, 225, 238)).  Additionally, Defendant argues that while these records concern a left foot and ankle injury, Plaintiff "testified that he had not sought treatment for them since the original injury" and that the injuries significant to the disability claim were sustained in 2011.  (*Id.* at 43-44 (citing Tr. at 44, 48, 49)).  Finally, Defendant contests Plaintiff's argument that Dr. Wright's opinion is "inaccurate" because "[a]n operative report, treatment notes, doctor's prognosis, or other information from more than a decade earlier do not" render a later finding "inaccurate."  (*Id.* at 44).  Thus, Defendant maintains that "Plaintiff has failed to show that the [Appeals Council] erred in denying the Request for Review."  (*Id.*).

Generally, the administrative process permits a claimant to present new evidence at each stage of the administrative process.  *Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x 939, 943 (11th Cir. 2017); *Ingram v. Comm'r of Soc. Sec.*, 496

F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. § 404.900(b).  Evidence submitted for the first time to the Appeals Council is determined under a Sentence Four analysis. *Ingram*, 496 F.3d at 1253.  The Appeals Council must consider new and material evidence that relates to the period on or before the date of the ALJ's decision and "must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"  *Id*. (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)); *Ashley*, 496 F.3d at 943 (citing *Washington v. Comm'r Soc. Sec.*, 806 F.3d 1317, 1320 (11th Cir. 2015)).  New evidence is considered material and thereby warranting a remand if "there is a reasonable possibility that the new evidence would change the administrative outcome."  *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).  In addition, the new evidence must not be cumulative of other evidence of record.  *Ashley*, 496 F.3d at 943-44.  "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate."  *Washington*, 806 F.3d at 1321.

Thus, courts employ a two-prong analysis to determine whether the Appeals Council erred when not remanding an action.  The first prong is whether the evidence is "new," and the second prong is whether the new evidence is "material." *Ingram*, 496 F.3d at 1253.

The parties focus their arguments on the second prong of whether the new evidence is "material."  Before addressing that issue, the Court must consider whether the evidence is "new."

To be considered new, the evidence must relate to the period on or before the date of the administrative law judge hearing decision. *Id.* In this case, the ALJ rendered his decision on July 5, 2019. (Tr. at 14-31). The evidence submitted to the Appeals Council constituted medical records from Shady Grove Orthopedics dated March 22, 2006, through January 24, 2008, and Shady Grove Adventis Hospital dated April 11, 2006, through August 17, 2006. (*Id.* at 59-86). Thus, the evidence submitted to the Appeals Council constitutes new evidence. The Court now turns to the second prong, whether the evidence is material.

For evidence to be material, the evidence must demonstrate that the ALJ's action, finding, or conclusion is contrary to the weight of the evidence currently of record. *Ingram*, 496 F.3d at 1253.

The Appeals Council denied Plaintiff's request for review. (Tr. at 1). Regarding the new evidence, the Appeals Council concluded that the "evidence does not show a reasonable probability that it would change the outcome of the decision." (*Id.* at 2).

As an initial matter, the Undersigned notes that the ALJ's decision demonstrates that the ALJ was fully aware of Plaintiff's left ankle fracture. (*See id.* at 19-20, 26). Indeed, the ALJ found that Plaintiff's status post remote left ankle fracture constituted a severe impairment. (*Id.* at 19). Nevertheless, the ALJ concluded that "after the alleged onset of disability date, the medical evidence of record for the period at issue contains very little evidence of any positive findings on objective examination or other evidence to establish that the claiming is as limited as

alleged." (*Id.* at 20 (citing Tr. at 1232)).  In support, the ALJ cites both Plaintiff's

treating neurologist Dr. Driscoll's and treating physician Dr. Wright's opinions,

highlighting that both doctors noted that Plaintiff had a normal gait.  (*Id.* (citing Tr.

at 1229; 1246)).  The ALJ reasserts these findings during the RFC narrative, again

noting that "after the alleged onset of disability date, the medical evidence of record

contains very little evidence of any positive findings on objective examination or

other evidence to establish that the claimant is as limited as alleged." (*See id.* at 26).

The ALJ then determined that the RFC limitation to "light work with no operation

of foot controls, no commercial driving, and occasional balancing fully account for

any residual left ankle associated allegations or limitations." (*Id.*).  In support, the

ALJ concluded that "the physical examinations in the medical evidence of record

strongly support that the claimant can perform light work consistent with the residual

functional capacity finding." (*Id.*).  Thus, it is clear that the ALJ was aware of the

injury and subsequent surgery and considered it in determining the RFC. (*See id.* at

26).

Upon careful review of the record and the ALJ's decision, the Undersigned

finds that the Appeals Council did not err in determining that the new evidence was

not material.  First, as noted above, the ALJ was aware of the injury and subsequent

surgery and considered it in determining the RFC.  (*See id.* 19-20, 26).  In so doing,

the ALJ specifically noted that "*after the alleged onset of disability date*, the medical

evidence of record contains very little evidence of any positive findings on objective

examination or other evidence to establish that the claimant is as limited as alleged."

*See, e.g.*, *id.* at 26 (emphasis added)).  Notably, the new evidence predates the alleged disability onset by at least nine years.  (*Id.* at 59-86).  As such, the evidence cannot contradict the ALJ's finding that the medical evidence of record *dated after the alleged onset date* contains little evidence supporting Plaintiff's allegations.  (*See id.* at 26).  Second, while Plaintiff argues that "the ALJ relied largely on" Dr. Wright's findings regarding Plaintiff's normal gait, (*see* Doc. 25 at 41-42), the Undersigned notes that the ALJ equally relied on Dr. Driscoll's opinion, in which she made the same finding, (*see* Tr. at 26 (citing Tr. at 1246)).  Plaintiff's argument fails to address or specifically acknowledge the ALJ's reliance on both Plaintiff's primary care provider's and treating neurologist's findings that he had a normal gait.  (*See* Doc. 25 at 41-42).  Ultimately, upon consideration, the Undersigned finds the Appeals Council did not err in determining that an opinion dated over a decade before the relevant time period, regarding an injury addressed by the ALJ, does not show that "there is a reasonable possibility that the new evidence would change the administrative outcome."  *Hyde*, 823 F.2d at 459.

In light of the foregoing, the Undersigned finds that the Appeals Council did not err in refusing to consider the new evidence.  Rather, the ALJ considered the injury and the medical evidence of record during the pertinent time period when determining the RFC, specifically noting that the medical evidence of record *dated after the alleged onset date* contains little evidence supporting Plaintiff's allegations.  See, *e.g.*, Tr. at 26 (emphasis added)).  Accordingly, the Undersigned finds that the

new evidence, dated nine to eleven years before the alleged onset date, did not provide a reasonable probability that the new evidence would change the administrative outcome.

**VI.      Conclusion**

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds that substantial evidence supports the ALJ's decision, the Appeals Council did not err in refusing to consider the new evidence, and the ALJ's decision is due to be affirmed.

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.      The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.      The Clerk of Court be directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on June 29, 2021.

_____

Mac R. McCoy
United States Magistrate Judge

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties