UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES RICHARD BROWN,

    Plaintiff,

v.                            Case No:  2:20-cv-446-JES-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

This matter is before the Court on consideration of Magistrate Judge Mac R. McCoy's Report and Recommendation (Doc. #27), filed on June 29, 2021, recommending that the Decision of the Commissioner be affirmed. Plaintiff filed Objections to the Report and Recommendation (Doc. #29) on July 13, 2021.

**1. ALJ Findings and Conclusions**

Plaintiff is 52 years old, approaching advanced age, with at least a high school education who can communicate in English. (Doc. #22-2, Tr. 29.) Plaintiff is 5'9" and weighs about 201 to 208 pounds with a body mass index of 30. (Id., Tr. 24.) On July 5, 2017, plaintiff filed an application for a period of disability and disability insurance benefits alleging an onset date of July 1, 2017. (Id., Tr. 17.) The Administrative Law Judge (ALJ) found that plaintiff met the insured status requirements through December 31, 2021. (Id., Tr. 19.)

At step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity since July 1, 2017, the alleged onset date. (Id., Tr. 19.)  At step two, the ALJ determined that plaintiff had the following impairments that significantly limit the ability to perform basic work activities: Plaintiff has right eye blindness, encephalopathy status post trauma, status post traumatic brain injury, status post remote left ankle fracture, obesity, and neurocognitive disorder.  (Id., Tr. 19.)  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id., Tr. 20.)

The ALJ found that plaintiff had the residual functional capacity to:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour work day; stand and/or walk for six hours in an eight hour workday; no operation of foot controls; occasional climbing of ramps or stairs; but may never climb ladders, ropes, or scaffolds; occasional balancing; frequent stooping, kneeling, and crouching; no crawling; no commercial driving; no exposure to hazardous machinery or unprotected heights; limited to occupations that do not require depth perception and binocular vision; able to understand, remember, and carryout simple tasks, low stress work defined as only occasional decision-making and only occasional changes in work setting; occasional interaction with coworkers and supervisors; and no interaction except incidental with the public.

Id., Tr. 22.)  The ALJ determined that plaintiff was unable to perform any past relevant work as a store laborer (medium) or cable line technician (heavy).  The vocational expert testified that plaintiff would be able to perform the requirements of a marker (light), office helper (light), or routing clerk (light).  As a result, the ALJ determined that plaintiff was not "not disabled". (Id., Tr. 30.)  At step 5, having considered plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there were jobs in the national economy that plaintiff could perform.  (Id., Tr. 29.)

**2. Magistrate Judge's Recommendations**

Plaintiff raised three issues on appeal: (1) whether the ALJ properly considered the opinion of the state agency physician, Dr. Arkin, and presented a complete hypothetical question to the vocational expert; (2) whether the ALJ properly resolved the apparent inconsistencies between the vocational expert and the DOT; and (3) whether the Appeals Council properly denied plaintiff's request for review in light of the evidence concerning plaintiff's left foot injury submitted to it.

As to the first issue, the Magistrate Judge found that the ALJ properly weighed the opinion of Dr. Arkin as unpersuasive after determining that it was inconsistent with the findings of Dr. Driscoll, Dr. Wright, and Dr. Goodwin.  (Doc. #27, pp. 10-11.) The Magistrate Judge found that the ALJ considered the recommended

limitation but chose not to adopt it. The Magistrate Judge noted that even if the ALJ found the opinion persuasive, he is not required to adopt every limitation verbatim if a reason is provided for rejecting the limitation. (Id., p. 11.)

> Here, although the ALJ did not present a hypothetical that included a limitation to avoid a moderate noise level, the ALJ was not required to include limitations that he found to be unsupported by the record. *See Forrester*, 455 F. App'x at 903. As discussed above, the Undersigned finds no error with the ALJ's evaluation of the record evidence, including the ALJ's decision to not include a noise limitation. To the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand. *See Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014).

(Id., pp. 12-13.) The Magistrate Judge also found that any error would be harmless because substantial evidence supports the ALJ's ultimate decision. (Id.) The Magistrate Judge rejected plaintiff's argument that the position of routing clerk was obsolete and found that even if reduced by 95% to account for any potential finding of obsoleteness, the number of available routing clerk positions would still be significant. (Id., pp. 15-16.)

As to the second issue, the Magistrate Judge found that the three occupations identified by the ALJ required a reasoning level of two. The Magistrate Judge rejected the argument that jobs with a DOT reasoning level above level one conflict with plaintiff's limitation to "understand, remember, and carryout simple tasks."

- 4 -

> Because the Undersigned determines that no apparent conflict exists between a limitation to "understand, remember, and carryout simple tasks" and a reasoning level two occupation, the Undersigned finds that Plaintiff could perform the work of a marker, office helper, or routing clerk and, therefore, that the ALJ did not err. Thus, the Undersigned recommends that the decision be affirmed on this issue.

(Id., p. 21.)

As to the third issue, the Magistrate Judge noted that "[t]o be considered new, the evidence must relate to the period on or before the date of the administrative law judge hearing decision", or July 5, 2019.  (Id., p. 25.)  Plaintiff contended that a 2006 surgery and a 2008 examination by the surgeon regarding a left foot injury and a permanent range of motion restriction in the left ankle were submitted to the Appeals Council as new evidence, but review was erroneously denied.  Plaintiff concedes that he worked in 2006 and 2008 despite the injury but it was "short-lived" and part-time.  (Id., pp. 21-23.)  The Magistrate Judge found that the evidence is considered new, but not material because the ALJ was aware of the injury and surgery and considered both in determining the residual functional capacity.  (Id., p. 26.)  The Magistrate Judge, noted:

> In so doing, the ALJ specifically noted that "*after the alleged onset of disability date*, the medical evidence of record contains very little evidence of any positive findings on objective examination or other evidence to establish that the claimant is as limited as alleged."

(Id., p. 26.)  The new evidence predates the alleged disability onset date by at least 9 years and therefore cannot contradict the ALJ's findings and would not have changed the "administrative outcome". (Id., p. 27.)

### 3. Review of Objections

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing Crawford, 363 F.3d at 1158-59).   Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence.  Crawford, 363 F.3d at 1158-59 (citing Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)).  The Court does not decide facts anew, make credibility judgments, reweigh the evidence, or substitute its judgment for that of the Commissioner. Moore, 405 F.3d at 1211 (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(citing Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  The Court reviews the Commissioner's

conclusions of law under a *de novo* standard of review. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007) (citing Martin, 894 F.2d at 1529).

### A. Issue One

Plaintiff argues that the ALJ failed to articulate and properly consider the opinion of Dr. Arkin regarding plaintiff's limitations with noise. (Doc. #29, p. 3.) Plaintiff argues that inclusion of a noise limitation in the residual functional capacity based on the opinion of a State agency doctor would have required vocational expert testimony with the limitation added to the hypothetical. (Id., p. 5.)

The ALJ did not specifically identify the opinion of Dr. Arkin, but the ALJ did not find persuasive:

> the opinions of the state agency reviewing medical consultants at initial and reconsideration who opined that the claimant has no exertional limitations, frequent postural limitations except for occasional balancing, environmental limitations, and limited right near acuity, far acuity, depth perception, and field of vision due to right eye blindness. (Exhibits 1A; 3A). These opinions are not consistent with the medical evidence of record because the claimant is more limited than assessed particularly with regard to his vision which limits him to light work, as defined above, with respect to lifting, carrying, depth perception, and balance limitations. Despite these assessed limitations, the objective physical examination findings were generally normal by the claimant's treating neurologist, Dr. Driscoll, and the claimant's primary care provider Dr. Wright, as above. (Exhibits 13F;

> 23F; 30F). These opinions are also inconsistent with the opinion of the consultative ophthalmologist Dr. Goodwin, as below, which is more consistent with the performance of light work rather than work at a higher exertional level. (Exhibit 17F/G). Accordingly, I do not find these opinions persuasive.

(Doc. #22-2, Tr. 27-28.)  The ALJ credited Dr. Wright's physical examination findings in Exhibit 23F, which included a notation about ears as "Denied: Discharge, Dizziness. Hearing aid. Hearing Impairment Infections. Pain. Ringing in Ears." (Doc. #22-14, Tr. 1223.)  The ALJ credited the opinions that suggested light work, and not the higher exertional levels suggested by the state agency doctors.  As noted by the Magistrate Judge, at least one of the positions has a noise level requirement of quiet.  (Doc. #27, p. 13 citing Doc. #25-5, p. 6.)  The Court overrules plaintiff's objection.

### B. Issue Two

Plaintiff argues that the ALJ specifically found the State agency opinions of moderate limitations to be persuasive, yet the limitations were not included in the assessment.  (Doc. #29, pp. 5-6.)  Plaintiff argues that "if the ALJ believed a limitation to simple tasks addressed the moderate limitations with understanding and remembering detailed instructions, then the jobs which require dealing with detailed instructions would be inconsistent with the ALJ's RFC." (Id., p. 6.)

The hypothetical included "mentally able to understand, remember, and carry-out simple instructions; low-stress work defined as only occasional decision-making, only occasional changes in the work setting, occasional interaction with co-workers and supervisors, no interaction with the public except incidental; and limited to jobs that do not require depth perception." (Doc. #22-2, Tr. 53.) The vocational expert suggested several jobs that would be available: Marker, Office helper, and a routing clerk. Each is light with a specific vocational preparation of 2, and a reasoning level of 2, with the ability to apply "commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." The second hypothetical added physical limitations and the vocational expert testified that the work would be sedentary. When counsel asked if the jobs could be performed with a reasoning level of 1, the response was "No." (Id., Tr. 56.) This was also true for the proposed addition of "the individual would forget instructions daily." (Id.) The Eleventh Circuit recently found that there is no apparent conflict between an ability to "understand, carry-out, and remember simple instructions", and positions with a reasoning level of two. Buckwalter v. Acting Comm'r of Soc. Sec., 997 F.3d 1127, 1134 (11th Cir. 2021). Plaintiff's objection is overruled.

**C. Issue Three**

Plaintiff argues that the evidence submitted to the Appeals Council about plaintiff's left foot problems was new and material because it showed an ankle fusion, no subtalar joint motion, and 40-degree left ankle motion without pain. (Doc. #39, pp. 6-7.) Plaintiff argues that the evidence disputes the accuracy of Dr. Wright's notes, the primary care physician, which were relied upon by the ALJ. (Id., p. 7.)

The ALJ discussed plaintiff's "status post remote left ankle fracture and subsequent repair,"

> After the alleged onset of disability date, the medical evidence of record contains very little evidence of any positive findings on objective examination or other evidence to establish that the claimant is as limited as alleged. (Exhibit 24F/2). The residual functional capacity finding's limitation to light work with no operation of foot controls, no commercial driving, and occasional balancing fully account for any residual left ankle associated allegations or limitations. Despite the claimant's balance related allegations and complaints, there is no evidence that a cane or an assistive device is medically necessary or used by the claimant. The claimant testified he did not require a cane. (Hearing Testimony). Furthermore, the claimant's treating neurologist, Dr. Driscoll, found that the claimant had a normal gait and that his subtle balance issues are not evident on examination. (Exhibit 30F/4). Moreover, Dr. Wright found the claimant to have a normal gait as well. (Exhibit 23F/9). Accordingly, the physical examinations in the medical evidence of record strongly support that the claimant can perform light work

>  consistent with the residual functional capacity finding.

(Doc. #22-2, Tr. 26.)  The ALJ also considered plaintiff's subjective testimony:

> Q. Do you have any difficulty sitting?
>
> A. 20 to 30 minutes, and then my ankle will lock up, and it's painful once I get up, because there's a limited range of motion to stretch that back out, and the more I do it, the more of an issue it becomes.
>
> Q. Which foot is that?
>
> A. Left – left foot, left ankle.
>
> Q. Do you have difficulties with balance?
>
> A. Yes.
>
> Q. How frequently do you feel off-balance?
>
> A. I can take on any task ten to 15 minutes, and then it's a deliriousness, equilibrium issue.  I can walk for a half hour, but that's – that's about it, then I have to sit.
>
> Q. What do you mean when you say deliriousness?
>
> A. My head, kind of, spinning around being dizzy.
>
> Q. Okay.  Do you have any depth perception?
>
> A. I do, but I have issues with – with how close something actually is.
>
> . . . .
>
> Q. And, why can't you push your lawn mower anymore?
>
> A. I can go ten minutes, and my head's spinning and my ankle's hurting, and I'll go all week – it'll take me a week to cut my lawn. And, by

> the time I get to the end, it's time to do the end again; I have to stop every ten minutes/15 minutes to take a break.
>
> Q. Have you had any treatment for your ankle?
>
> A. Not since it happened, and that was a two to three year process because I had two surgeries, hyperbaric treatment, wound care. And, what he had to do is take a piece of bone from under my knee, and basically fuse my ankle –
>
> Q. Okay.
>
> A. – so it's limited in its range, and kind of like everything I deal with, my head injuries now, I was basically told that's as good as it's going to get – that was –
>
> Q. So, it was your left ankle?
>
> A. Yes.
>
> Q. Okay.
>
> A. And, that's as good as it'll ever get.
>
> Q. You also talked about balance issues; do you have to use a cane?
>
> A. No.

(Doc. #22-2, Tr. 44-45, 48-49.)  The Appeals Council denied plaintiff's request for review finding that the reasons for disagreement and the exhibits did not provide a basis for changing the ALJ's decision.  (Doc. #22-2, p. 2.)

"The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  In this case, the ALJ clearly articulated

the weight given to the various opinions of the state agency physicians and treating physicians and why. Plaintiff's objection is overruled.

After an independent review, the Court agrees with the findings and recommendations in the Report and Recommendation.

Accordingly, it is now

**ORDERED**:

1. The Report and Recommendation (Doc. #27) is **accepted and adopted** by the Court.

2. Plaintiff's Objections (Doc. #29) are **OVERRULED**.

3. The Decision of the Commissioner of Social Security is **affirmed**.

4. The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___27th___ day of July 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Hon. Mac R. McCoy
U.S. Magistrate Judge

Counsel of Record